BROWN, J.*
The present controversy arises out of two equipment rental agreements entered into between the plaintiff as lessor and the defendant as lessee. Separate actions which were instituted on each agreement were consolidated for trial and resulted in judgments for plaintiff, from which defendant now appeals.
The record shows that defendant contemplated an expansion in its existing operations. As a part of this program it needed additional equipment. One such item was a new dragline. Because a conditional sales contract would necessitate a larger down payment than defendant could provide, a rental agreement was arranged. However, since such an agreement likewise called for certain security, defendant gave plaintiff a bill of sale to a used tractor and transferred its equity in a Tracto-shovel then being rented from plaintiff. The old rental agreement was cancelled.
The second rental agreement, which was executed several months later, covered a new portable rock plant with crushers and motor. Again, because of defendant’s lack of funds for the down payment on a conditional sales contract, the second agreement was similar to the first. To finance this agreement, defendant obtained an advance from a customer in the sum of $2,500 and assigned to plaintiff certain items of used equipment.
Each contract gave defendant, subject to certain specified terms and conditions, the option to purchase without limitation as to time. The contracts further provided that should lessee fail to make payments when due, the lessor could, at its option, without notice or demand, take possession of all the property including the items rented, as well as the so-called “security items.”
By reason of defendant’s default under the first rental agreement, plaintiff threatened to repossess the equipment covered by that agreement. Thereupon, defendant commenced an action to restrain the repossession and for a declaration of rights under both rental agreements. Subsequently, the parties entered into written agreements whereby defendant was given the opportunity to remove its delinquencies. The agreements *50 also provided that the equipment given in security would be appraised and sold; that the proceeds would be applied to defendant’s delinquencies; and that the rental payments would be reduced. The delinquencies were removed by defendant and no further proceedings were taken in that action.
Shortly thereafter one of the agreements was again revised by reducing the monthly payments. Sometime later defendant again became delinquent on both agreements and a claim and delivery action was filed by plaintiff. All of the equipment covered by both contracts was repossessed and moved to plaintiff’s Stockton yard. The so-called “security items” were sold at public auction. Defendant received notice of the time and place of sale and was present. The amount received from the sale was credited to the rental agreement.
Defendant’s argument on appeal is to the effect that as a matter of law the trial court was compelled to find that the two agreements were conditional sales contracts, and that the failure to do so and apply the appropriate measure of damages has resulted in the unjust enrichment of plaintiff. This contention is wholly distinct from the theory set forth in defendant’s cross-complaint and advanced at the trial.
The agreements themselves refer to the parties as “lessor” and “lessee” and state that lessee “hires and rents” from the lessor. Furthermore, defendant’s cross-complaint admits the status of the contracts as lease purchase agreements; that is, each cross-complaint contains allegations such as, “said property was leased under a rental agreement . . . [sjaid rental agreement is a lease-purchase agreement and grants cross-complainant an option to purchase the rental property . . . the parties at the time of entering into said lease agreement, further agreed orally that when said lease agreement was terminated there would be substituted therefor a conditional sales contract. ...”
Also, it should be noted that at the trial the defendant took the position that it was not liable for the back rentals and that by virtue of repossession it had been damaged to the extent of all rentals paid and the value of the “security items” because of plaintiff’s failure to convert the rental contracts into conditional sales contracts extending over a longer period of time, with smaller monthly payments, when 25 per cent of the dragline contract and 33y8 per cent of the rock plant contract had been paid. It was defendant’s further contention that under two oral agreements made contemporaneously *51 with the written rental agreements, defendant could skip any three months’ payment at its discretion, and the $2,500 cash advance initial payment on the rock plant contract was actually advance rental to he applied whenever defendant was in default on its regular payments.
In its memorandum opinion, the trial court noted that there might have been a trade custom, as contended by defendants, that when payments under comparable agreements had reduced the balance to certain percentages of the contract prices the agreements would be rewritten as conditional sales contracts. But, as the court further noted, under such custom before the agreements could be converted to sales contracts the original agreements would have to be current and the balance thereon paid down to a point where a bank loan could be obtained for the contract balance. However, the court also noted that defendant’s contention was without merit, since there was no serious contention that the contracts at any time were “bankable,” even if it could be said under defendant’s theory that they were current, and specifically found that “the Rental Agreements therein referred to is a lease purchase agreement with option to purchase.” These findings were not questioned on defendant’s motion for a new trial, nor are they on appeal.
Prom what has been said it is obvious that at the outset of its appeal defendant is met with the well established rule that one may not submit his case on a different theory from that on which it was tried. (3 Witkin, California Procedure, Appeal, § 96, p. 2264.) The reason for the rule, as stated in Ernst v. Searle, 218 Cal. 233, 241 [22 P.2d 715] is that " To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant.” This is particularly pertinent to the present case where the theory advanced for the first time on appeal involves mixed questions of law and fact. (Panopulos v. Maderis, 47 Cal.2d 337 [303 P.2d 738].)
The practical application of the reason for the rule is well illustrated by the implications involved in a decision on the issue defendant now attempts to raise on appeal. The type of contract in the form of those here at issue is a common one widely used in the heavy equipment industry as a means of allowing persons to obtain the equipment immediately, even though they have insufficient funds for the higher down payment required on a conditional sales contract. The legal nature *52 of such important contractual relationships should be determined at the trial level, where issues involved in the context of the negotiations may be developed.
Of course, the unjust enrichment contention, which is based upon the alleged status of the written agreements as conditional sales contracts, likewise may not be raised for the first time on appeal. Had this question been presented at the trial level ancillary to a' properly raised inquiry into the nature of the written agreements, the factual question as to whether defendant was a willful defaulter would have been germane. (Bird v. Kenworthy, 43 Cal.2d 656 [277 P.2d 1].)
Therefore, only the following two issues are properly raised for our determination.
Defendant contends that the trial court erred in allowing no credit for the $2,500 sum which defendant argues was a down payment. The record amply supports the conclusion that said sum was merely part performance of the rental agreement. Plaintiff testified that it could not justify shipping such an expensive piece of equipment from the factory under a lease purchase agreement unless a minimum of $2,500 was deposited. Defendant’s contention that this sum was in fact advance rentals merely created a conflict in the evidence which the trial court resolved in plaintiff’s favor.
Defendant further contends that plaintiff failed to obtain the best price under the circumstances in the public sale of the so-called “security items.” Here, again, we note that the trial court specifically referred to what it termed “a great deal of exaggeration by witnesses on both sides” and that defendant had failed to support its contentions. It is too well established to warrant citation of authority that the trial court’s resolution of conflicting evidence will not be disturbed on appeal. We might add that our independent examination of the record leads us to conclude, as did the trial court, that there was no “. . . evidence that in the public sale held, overreaching, chilling of sales, or fraud on the part of the plaintiff took place. Defendant was duly notified and if he was unable himself to bid for the equipment, he was unhindered in efforts to stimulate bidding.”
The judgments are affirmed.
Peek, P. J., and Schottky, J., concurred.
Appellant’s petition for a hearing by the Supreme Court was denied August 22, 1962.

Assigned by Chairman of Judicial Council.