No. 85–19. FEIN v. PERMANENTE MEDICAL GROUP. Appeal
from Sup. Ct. Cal. dismissed for want of substantial federal ques-
tion.

JUSTICE WHITE, dissenting.

California Civ. Code Ann. § 3333.2 (West Supp. 1985) estab-
lishes a $250,000 maximum limitation in medical malpractice ac-
tions for "noneconomic losses to compensate for pain, suffering,
inconvenience, physical impairment, disfigurement, and other non-
pecuniary damage." This statute is part of the Medical Injury
Compensation Act of 1975, enacted by the California Legislature
in response to the dramatic rise in consumer medical costs caused
by the increase in both monetary awards in medical malpractice
actions and medical malpractice insurance premiums. See 1975
Cal. Stats., 2d Ex. Sess., ch. 2, § 12.5(1)(b), p. 4007.

Appellant brought a medical malpractice action against appellee,
Permanente Medical Group, a partnership of physicians, for fail-
ing to diagnose and prevent a myocardial infarction. The jury
awarded appellant total damages of $1,287,783, including $500,000
for noneconomic losses. The trial judge, however, pursuant to
§ 3333.2, reduced the amount of noneconomic damages to $250,000.

The California Supreme Court affirmed, rejecting appellant's challenge that § 3333.2 contravenes both the Due Process and Equal Protection Clauses of the Federal Constitution. 38 Cal. 3d 137, 695 P. 2d 665 (1985). The court found no due process violation based on the theory that "the Legislature retains broad control over *the measure,* as well as *the timing,* of damages that a defendant is obligated to pay and a plaintiff is entitled to receive, and . . . the Legislature may expand or limit recoverable damages so long as its action is rationally related to a legitimate state interest." *Id.,* at 158, 695 P. 2d, at 680 (emphasis in original). The court then reasoned that the limitation imposed by § 3333.2 was a rational response to the problem of rising medical malpractice insurance costs.

Similarly, the court found that § 3333.2 did not improperly discriminate either between medical malpractice plaintiffs and other tort plaintiffs, or within the class of medical malpractice plaintiffs by denying full recovery to those with noneconomic damages exceeding $250,000. The legislature's decision to limit the application of § 3333.2 to medical malpractice cases, and within those cases to those with large noneconomic damages awards, the court reasoned, was a rational response to escalating malpractice insurance rates.

California thus joins Indiana as the only two States to uphold the constitutionality of this type of medical malpractice damages limits. See *Johnson* v. *St. Vincent Hospital, Inc.,* 404 N. E. 2d 585, 598–601 (Ind. 1980). Four other States which have addressed similar damages limitations have invalidated the challenged provisions on federal constitutional grounds. *Baptist Hospital of Southeast Texas* v. *Baber,* 672 S. W. 2d 296, 298 (Tex. App. 1984) ($500,000 limit on damages other than medical expenses); *Carson* v. *Maurer,* 120 N. H. 925, 941–943, 424 A. 2d 825, 836–838 (1980) ($250,000 limit on "noneconomic" damages); *Arneson* v. *Olsen,* 270 N. W. 2d 125, 135–136 (N. D. 1978) ($300,000 limit on total damages); *Simon* v. *St. Elizabeth Medical Center,* 3 Ohio Op. 3d 164, 166, 355 N. E. 2d 903, 906–907 (Com. Pl. 1976) ($200,000 limit on "general" damages).*

---

*In addition, at least one other court has struck down a similar medical malpractice damages cap as violative of the State's Constitution. *Wright* v. *Central Du Page Hospital Assn.,* 63 Ill. 2d 313, 329–330, 347 N. E. 2d 736, 743 (1976). Cf. *Jones* v. *State Board of Medicine,* 97 Idaho 859, 877, 555 P. 2d 399, 416–417 (1976) (remanding for factual determination on whether

One of the reasons for the division among the state courts is a question left unresolved by this Court in *Duke Power Co.* v. *Carolina Environmental Study Group, Inc.*, 438 U. S. 59 (1978). In that case, the Court upheld the provisions of the Price-Anderson Act, 42 U. S. C. § 2210, which place a dollar limit on total liability that would be incurred by a defendant in the event of a nuclear accident. One of the objections raised against the liability limitation provisions was that they violated due process by failing to provide those injured by a nuclear accident with an adequate *quid pro quo* for the common-law right of recovery which the Act displaced. The Court noted: "It is not at all clear that the Due Process Clause in fact requires that a legislatively enacted compensation scheme either duplicate the recovery at common law or provide a reasonable substitute remedy. However, we need not resolve this question here . . . ." 438 U. S., at 88 (footnote omitted).

The North Dakota Supreme Court in *Arneson, supra,* followed *Duke Power Co.*, and refused to hold that the legislature may not limit a pre-existing right without providing a *quid pro quo.* 270 N. W. 2d, at 134–135. Nevertheless, the court went on to find that the imposition of a damages cap on malpractice claims did not provide a sufficient *quid pro quo* for the severely injured malpractice plaintiff, as his loss of recovery was offset only by lower medical costs for all recipients of medical care, and he received no specific benefit in return. *Id.*, at 136, citing *Wright* v. *Central Du Page Hospital Assn.*, 63 Ill. 2d 313, 328, 347 N. E. 2d 736, 743 (1976). This approach has been followed by the courts in Texas and New Hampshire. See *Baptist Hospital of Southeast Texas, supra,* at 298; *Carson, supra,* at 941–943, 424 A. 2d, at 837–838. In the instant case, however, the California Supreme Court concluded that "it would be difficult to say that the preservation of a viable medical malpractice insurance industry in this state was not an adequate benefit for the detriment the legislation imposes on malpractice plaintiffs." 38 Cal. 3d, at 160, n. 18, 695 P. 2d, at 681–682, n. 18.

Whether due process requires a legislatively enacted compensation scheme to be a *quid pro quo* for the common-law or state-law remedy it replaces, and if so, how adequate it must be, thus ap-

---

a medical malpractice "crisis" actually existed in Idaho to justify adoption of damages limitation).

pears to be an issue unresolved by this Court, and one which is dividing the appellate and highest courts of several States. The issue is important, and is deserving of this Court's review. Moreover, given the continued national concern over the "malpractice crisis," it is likely that more States will enact similar types of limitations, and that the issue will recur. I find, therefore, that the federal question presented by this appeal is substantial, and dissent from the Court's conclusion to the contrary.